**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.   No. CR 09-1678 MCA

**GAIL PADILLA,**

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Gail Padilla's *Motion to Produce Informants and to Compel Disclosure of Information Regarding Informants* [Doc. 20], filed September 29, 2009; *Ms. Padilla's Motion in Limine* [Doc. 22], filed October 2, 2009; Ms. Padilla's *Motion in Limine to Exclude "Expert" Testimony of Adrian Flores* [Doc. 34], filed October 9, 2009; Ms. Padilla's *Motion in Limine to Exclude "Expert" Testimony of Laura J. Hernandez* [Doc. 35], also filed October 9, 2009; and *Ms. Padilla's Second Motion in Limine* [Doc. 46], filed October 13, 2009. The Court heard arguments and proffers from counsel at the Call of the Calendar on October 15, 2009. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies Defendant's *Motion to Produce Informants and to Compel Disclosure of Information Regarding Informants*; grants *Ms. Padilla's Motion in Limine*; denies in part and defers ruling in part on Ms. Padilla's *Motion in Limine to Exclude "Expert" Testimony of Adrian Flores*; denies in part and defers ruling in part on Ms. Padilla's *Motion in Limine to Exclude*

*"Expert" Testimony of Laura J. Hernandez*; and grants *Ms. Padilla's Second Motion in Limine*.

### **1.** *Motion to Produce Informants and to Compel Disclosure of Information Regarding Informants* **[Doc. 20]**

By this motion, Ms. Padilla has asked the Court for, among other things, "an [o]rder requiring the Government to produce the informant or informants involved in this case for the defense to interview. . . ." [Doc. 20 at 1]. In support, Ms. Padilla relies on the United States Supreme Court case of Roviaro v. United States, 353 U.S. 53 (1957). Having consistently represented, both through the pleadings and as stated at the Call of the Calendar, that the confidential informant ("CI") in question will testify at trial, the Government points to United States v. Pennick, 500 F.2d 184, 187 (10th Cir. 1974), in support of its position that, under the circumstances, it is not required to disclose the CI's identity. [See Doc. 23 at 4-5].

In Roviaro, the United States Supreme Court held that the United States District Court for the Northern District of Illinois committed prejudicial error by allowing the government to withhold the identify of an undercover employee/CI where (1) the CI was the sole participant, other than the defendant, in the transaction charged and, therefore, was the only witness in a position to amplify or contradict the testimony of government witnesses; and (2) the CI's possible testimony was highly relevant and might have been helpful to the defense. Roviaro, 353 U.S. at 63-65. The Court discussed "the informer's privilege[, which] is in reality the Government's privilege to withhold from disclosure the identity of persons

who furnish information of violations of law to officers charged with enforcement of that law[,]" but also noted that "[t]he scope of the privilege is limited by its underlying purpose." Id. at 59-60. The Court explained that the privilege ceases to apply in situations where the identity of the CI has become known to the defendant, "since the purpose of the privilege is to maintain the Government's channels of communication by shielding the identity of an informer from those who would have cause to resent his conduct." Id. at 60 n.8.

The Tenth Circuit has stated that

> [a] defendant seeking to force disclosure of an informant's identity has the burden to show the informant's testimony is relevant or essential to the fair determination of defendant's case. In determining whether to require disclosure, a court must balance the public interest in protecting the flow of information against the individual's right to prepare his defense. The court conducts this balancing in light of the crime charged, the possible defenses, and the significance of the informant's testimony. Where it is clear that the informant cannot aid the defense, the government's interest in keeping secret [the informant's] identity must prevail over the defendant's asserted right of disclosure.

United States v. Gordon, 173 F.3d 761, 767 (10th Cir. 1999) (*citing* Roviaro, 353 U.S. at 62).

Additionally, the defendant must show that the testimony of a confidential informant is "valuable to a defendant; mere speculation is not enough." United States v. Leahy, 47 F.3d 396, 398 (10th Cir. 1995). Disclosure is inappropriate where the informant has limited information, was not present during commission of the offense, and cannot provide any evidence that is not cumulative or exculpatory. See Gordon, 173 F.3d at 767-68. A defendant seeking disclosure of information on a confidential informant bears the burden of

3

proof. United States v. Sinclair, 109 F.3d 1527, 1538 (10th Cir. 1997).

The Tenth Circuit, however, has distinguished Roviaro, where the CI *did not* testify, from cases in which the CI *did* testify, explaining that it was not error for the United States District Court for the District of Kansas to refuse to require the Government to reveal the identity of an informer that "all knew was to testify upon trial." United States v. Pennick, 500 F.2d 184, 187 (10th Cir. 1974). In distinguishing the two situations, the Tenth Circuit said:

> In the instant case the informer was a Government witness and did appear and testify upon trial, submitting himself to examination and cross-examination, a fact which we deem to be significant. In other words, we are not here concerned with an informer who does not appear on trial as a Government witness, and who conceivably could be helpful to the defendant in his defense. So, the informer in the instant case being himself a Government witness, under the general rule cited above Pennick was not entitled to learn the identity of the informer, or any other Government witness, prior to trial.

Id. at 186.

In this case, the CI (whose name was disclosed during the Call of the Calendar)[1] will testify at trial. Again, the Tenth Circuit has held that where the CI testifies at trial, the Government need not disclose his or her identity prior to trial. See id. at 186. Because Ms. Padilla will have the opportunity to cross-examine the CI at trial, she is not entitled to pretrial disclosure of the CI's identity. See also United States v. Gutierrez, 05cr217 RB,

---

[1] Not only was the CI's name disclosed by the Government during the Call of the Calendar, counsel for Ms. Padilla advised the Court that they had correctly deduced the CI's identity and that their investigator had made contact with the CI on either the 8th or 9th of October, 2009, in an attempt to secure an interview with the CI.

*Memorandum Opinion and Order* [Doc. 57] at 7-8 (citing <u>Pennick</u> and denying defendant's motion to produce and disclose identity of *testifying* CI). The Court will deny Ms. Padilla's *Motion to Produce Informants and to Compel Disclosure of Information Regarding Informants* [Doc. 20].

### **2.** ***Ms. Padilla's Motion in Limine*** **[Doc. 22]**

In *Ms. Padilla's Motion in Limine*, Ms. Padilla seeks an order from this Court preventing the Government (without first establishing relevance and laying the proper factual foundation) from eliciting the following: (1) law enforcement officers' expressions of opinion that Ms. Padilla and her husband were dealing drugs from their house prior to the incident resulting in the instant charged offense; (2) law enforcement officers' allegations that Ms. Padilla's husband, Victor Padilla, has been involved in drug trafficking and other criminal activities; and (3) testimony from law enforcement officers that was obtained from others, including anonymous cooperating sources, which would amount to hearsay statements. [Doc. 22 at 2-4].

At the Call of the Calendar, counsel for the Government was specifically asked about these three categories of testimony. Counsel represented to the Court that she does not intend to elicit (1) law enforcement officers' expressions of opinion that Ms. Padilla and her husband were dealing drugs from their house prior to the incident resulting in the instant charged offense; (2) law enforcement officers' allegations that Ms. Padilla's husband has been involved in drug trafficking and other criminal activities; or (3) hearsay-based testimony from law enforcement officers that was obtained from others, including

5

anonymous cooperating sources. When questioned by the Court, counsel for Ms. Padilla expressed his satisfaction with the representations made by counsel for the Government. Accordingly, the Court will grant as moot *Ms. Padilla's Motion in Limine.*

### 3. *Motion in Limine to Exclude "Expert" Testimony of Adrian Flores* [Doc. 34] and
### 4. *Ms. Padilla's Motion in Limine to Exclude "Expert" Testimony of Laura J. Hernandez* [Doc. 35]

On October 9, 2009, the Government filed its *Notice of Intention to Offer Expert Testimony*, in which it advised that, during its case-in-chief, the Government intended to offer expert testimony from Laura J. Hernandez, a chemist with the New Mexico Department of Public Safety, and Border Operations Task Force Officer Adrian Flores. [See generally Doc. 29]. That same day, Ms. Padilla filed separate motions in limine seeking to exclude the testimony of these two proffered experts on grounds that (1) the Government's notice was untimely; (2) the notice did not adequately summarize or describe the proposed testimony of either expert witness; and (3) neither the notice nor the curriculum vitae provided for either witness supplied adequate information about these witnesses' qualifications. [See generally Docs. 34 and 35].

#### a. The Government's Late Disclosure of the Proposed Experts

By virtue of the discovery order entered in this matter on June 19, 2009, the Government was obligated to disclose, by no later than June 29, 2009,[2] "a written summary

---

[2] Because Ms. Padilla apparently has excluded weekends in her 10-day calculation, she maintains that the Government's proposed experts should have been disclosed by July 1, 2009. [See Doc. 34 at 1; Doc. 35 at 1-2]. By either the Court's or Ms. Padilla's calculation, the Government's notice was untimely.

of testimony the government intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence during its case in chief at trial[, describing] the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications." [Doc. 9 at 3]. The Government did not meet this deadline. Instead, as previously explained, the Government disclosed its proffered experts on October 9, 2009, 10 calendar days before the jury trial in this matter is set to commence. As a sanction, Ms. Padilla urges the Court to preclude the Government's use of the proposed expert testimony. [Doc. 34 at 2; Doc. 35 at 2].

The Tenth Circuit has held that "Rule 16(d)(2) of the Federal Rules of Criminal Procedure gives the district court broad discretion in imposing sanctions on a party who fails to comply with a discovery order." United States v. Wicker, 848 F.2d 1059, 1060 (10th Cir. 1988). When the Government fails to comply with a discovery order, factors for the Court to consider in determining whether a sanction is appropriate include: (1) the reasons for the delay, including whether the Government's noncompliance was in bad faith; (2) the extent of prejudice to the defendant as a result of the delay; and (3) the feasibility of curing the prejudice with a continuance. Id. at 1061.

In this case, counsel for the Government explained at the Call of the Calendar that she "assumed . . . and wrongly, obviously, that the time of the witness list filing would be also the time that would be appropriate for the expert notices to be filed." [See Oct. 15, 2009, Call of Calendar Transc.]. Counsel for the Government failed to follow and adhere to the discovery order entered on June 19, 2009, which clearly set forth the deadline for disclosure of expert witnesses. Counsel apparently assumed, incorrectly, that the deadline in place for

7

disclosure of trial (lay) witnesses applied as well to disclosure of expert witnesses. Despite counsel's failure to comply with the discovery order, there is no evidence (nor was there an allegation) that she acted in bad faith in failing timely to disclose her notice of intent to offer expert testimony.

As for the second factor—prejudice—the Court considers whether "the delay impacted the defendant's ability to prepare or present its case." United States v. Golyansky, 291 F.3d 1245, 1250 (10th Cir. 2002). With respect to Ms. Hernandez, counsel for the Government represented that, should she qualify as an expert, counsel would elicit testimony that Ms. Hernandez received from the Border Operations Task Force an untampered-with package that she logged in and then tested. Ms. Hernandez would then testify that the substance inside the package tested as methamphetamine. [See Oct. 15, 2009, Call of Calendar Transc.]. Having heard this representation, counsel for Ms. Padilla advised the Court that there would be no prejudice resulting from the proffered testimony of Ms. Hernandez. [See id.]. Given that counsel for Ms. Padilla has conceded that Ms. Padilla has not been prejudiced, the Court need not reach the third factor in the analysis.

With respect to Agent Flores, the Court notes that counsel for the Government originally proposed to have him testify as to the following issues: (1) the value of the amount of methamphetamine seized in this case; (2) what would be considered a distributable amount of methamphetamine, as opposed to a personal-use amount; and (3) the duties of

different individuals in a drug trafficking scheme.[3]  [See Oct. 15, 2009, Call of Calendar Transc.].  In response to this representation, counsel for Ms. Padilla argued that while

> certainly we could have anticipated that the Government would want [Agent Flores] to speak to distributable amounts or possibly the street value of it . . . as far as anything beyond that, we couldn't have anticipated that, that this expert would have been discussing how criminal organizations operate as well as general—it is the general overview of the business of drug trafficking scheme.  We couldn't have anticipated that, Judge.  I mean it's simple and straightforward to anticipate the former but not the latter, Judge.

[Id.].

Applying the Wicker factors to Agent Flores, the Court reaches the same conclusion with respect to the first factor, namely, that while counsel for the Government may have made an oversight as to when her notice of intention to offer expert testimony was due, there has been neither a showing nor even an allegation that she acted in bad faith.  As for prejudice, counsel for Ms. Padilla represented that he had no objection to Agent Flores testifying as to what would be considered a distributable amount of methamphetamine, as opposed to a personal-use amount, assuming proper foundation is laid.  Counsel also stated that he has no objection to Agent Flores testifying as to the value of the methamphetamine seized in this case.  These two areas of testimony also are the two areas to which counsel for Ms. Padilla specifically stated he would have expected Agent Flores to testify.

---

[3]  The Government also initially proposed to have Agent Flores testify as to the effects of methamphetamine on the human body.  However, the Government withdrew its request to offer such testimony.

Notwithstanding the Government's original representation that Agent Flores would also offer expert testimony on the duties of individuals within a drug trafficking scheme, upon subsequent questioning by the Court, counsel for the Government clarified that valuation and distributable versus personal-use amounts are the only two areas on which she will elicit Agent Flores' expert testimony. Given that counsel for Ms. Padilla expressly stated that he has no objection to these two areas of expert testimony, the Court finds that Ms. Padilla has not been prejudiced by the Government's late disclosure. Because Ms. Padilla has not been prejudiced, the Court need not reach the third factor in the analysis.

Even though Ms. Padilla has not been prejudiced by the late disclosure of the Government's expert witnesses, it still remains for the Court to exercise its special gatekeeping obligation to ensure that expert testimony is not admitted at trial unless it is both relevant and reliable. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell-Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993). The relevance of such testimony also must be weighed against "the danger of unfair prejudice, confusion of the issues, or misleading the jury" as well as "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. While the Court is not required to consider any particular set of factors or utilize a particular procedure in making such determinations with respect to expert testimony, the Court must make *some* kind of determination on the record in order to demonstrate that it has performed its gatekeeping function. See United States v. Velarde, 214 F.3d 1204, 1209 (10th Cir. 2000); Goebel v. Denver & Rio Grande W. R.R. Co., 215 F.3d 1083, 1088 (10th Cir. 2000). As part of its

gatekeeping function, and in addition to determining whether the proposed expert is qualified to offer an opinion, the Court must also determine whether (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. Reliability under Daubert is determined by looking at whether the reasoning or methodology underlying the testimony is scientifically valid, and relevance is determined by whether that reasoning or methodology properly can be applied to the facts in issue. Smith v. Sears Roebuck and Co., 232 Fed.Appx. 780, 781 (10th Cir. 2007).

The Court will conduct its gatekeeping function during the trial. Should Ms. Hernandez and Agent Flores qualify as experts on the basis of their respective training, experience, and education, Ms. Hernandez and Agent Flores will be permitted to testify as experts on the areas described more fully above. Accordingly, the Court will deny in part and defer ruling in part on Ms. Padilla's *Motion in Limine to Exclude "Expert" Testimony of Adrian Flores* and her *Motion in Limine to Exclude "Expert" Testimony of Laura J. Hernandez*.

### 5. *Ms. Padilla's Second Motion in Limine* [Doc. 46]

According to counsel for Ms. Padilla, on the morning of October 13, 2009, he received a telephone call from counsel from the Government, during which the Government attorney advised that she intended to present, as rebuttal evidence should Ms. Padilla testify, evidence of an alleged 2007 drug buy occurring in a house in which Ms. Padilla was living at the time. This purchase allegedly was made by a CI who is no longer available, and who

was described by the attorney for the Government as being unreliable. Ms. Padilla seeks to preclude the Government from asking about this alleged incident on numerous grounds, including that it is inadmissible evidence of a prior bad act. [See generally Doc. 46].

At the Call of the Calendar, the attorney for the Government admitted both that the CI is unavailable and has also "bec[o]me unreliable." She also explained, however, that she believes the evidence in question would be relevant "[i]f [Ms. Padilla] were to testify that she was never involved in drug dealing and didn't know anything about drugs generally or even that she said that she never new any drug deals to go on at her house." [See Oct. 15, 2009, Call of Calendar Transc.]. In that case, counsel explained, she would present Border Operations Task Force Agent Eddie Pacheco to testify that he and other law enforcement agents (1) patted down a CI to ensure the CI had no money or drugs; (2) drove past the house in question until they observed a sign (an open fence gate ) that drugs were available for sale inside; (3) provided the CI with $20; and (3) retrieved a small amount of cocaine from the CI (who no longer had the $20) after he exited the house. [Id.].

The Court agrees with Ms. Padilla that the evidence in question is evidence of a prior bad act that Ms. Padilla is alleged to have committed. [See Doc. 46 at 3]. Pursuant to Rule 404(b) of the Federal Rules of Evidence, however,

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith[, although i]t may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

Fed.R.Evid. 404(b).  The rationale is that evidence of prior bad acts requires a defendant to defend against past actions and tends to show that he is "'generally bad.'"  <u>United States v. Robinson</u>, 978 F.2d 1554, 1558 (10th Cir. 1992) (*quoting* <u>United States v. Burkhart</u>, 458 F.2d 201, 204 (10th Cir.1972)).  For that reason, the Tenth Circuit urges its trial courts to determine that the proposed Rule 404(b) evidence (1) tends to establish intent, knowledge, motive, etc.; (2) is so related to the charged offense that it serves to establish intent, knowledge, motive, etc.; (3) has real probative value and not just possible worth; and (4) is close in time to the crime charged.  <u>Robinson</u>, 978 F.2d at 1559.  The Government bears the burden of demonstrating how the proffered evidence is relevant to one or more issues in the case, and

> must articulate precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence of other acts. In addition, the trial court must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or restating Rule 404(b) will not suffice.

<u>United States v. Kendall</u>, 766 F.2d 1426, 1436 (10th Cir. 1985).  There must be a clear and logical connection between the alleged earlier offense or misconduct and the case being tried, and a "lack of clear association between the purported purpose for introduction of the evidence and the act itself renders the past conviction irrelevant, highly prejudicial and inadmissible."  <u>Robinson</u>, 978 F.2d at 1559 (internal quotations omitted).

   In this case, the Government has not "articulate[d] precisely the evidentiary hypothesis by which a fact of consequence may be inferred from the evidence" it seeks to

13

bring in.  See Kendall, 766 F.2d at 1436.  When asked at the Call of the Calendar how the alleged prior incident relates the charged offense, counsel for the Government responded:

> It would specifically depend Your Honor on what her testimony is.  *If she were to testify that she was never involved in drug dealing and **didn't know anything** about drugs generally or even that she said that **she never knew any drug deals to go on at her house**, I think that it becomes relevant*.  I do.

[See Oct. 15, 2009, Call of Calendar Transc. (emphasis added)].

By its express terms, Rule 404(b) makes admissible evidence of prior bad acts for the purpose of showing knowledge. See Fed.R.Evid. 404(b); see also United States v. Merryman, 630 F.2d 780, 786 (10th Cir. 1980) (evidence that, six months earlier, truck registered to defendant was seized while being loaded with marijuana was admissible under Rule 404(b) to rebut defendant's assertion of mistake, lack of intent, and lack of knowledge, where defendant's claim during trial for charged offense of possession with intent to distribute marijuana was that the truck involved in the incident for which defendant was on trial was borrowed, and she had no knowledge that it was carrying contraband).  However, before evidence will be deemed admissible under Rule 404(b), "[t]here must be a clear and logical connection between the alleged earlier offense or misconduct and the case being tried." United States v. Biswell, 700 F.2d 1310, 1317-18 (10th Cir. 1983).

In this case, it is not at all apparent that the alleged 2007 incident is either clearly or logically connected to the charged offense.  See Biswell, 700 F.2d at 1317-18.  Importantly, the Government has represented that this evidence, if it were to come in, would be offered by Eddie Pacheco, a Border Operations Task Force officer who arranged for the purchase of

14

the controlled substance at a house. It is unclear if Ms. Padilla was then living in the house or was present in the house during the transaction. Agent Pacheco, therefore, is unable to testify as to whether Ms. Padilla was involved in the transaction or if she even was present.[4]

Evidence of the alleged 2007 incident will not be admitted. First, the relevance—if any—of this incident is rendered highly suspect as a result of the fact that Agent Pacheco would be unable to testify as to Ms. Padilla's involvement in it. In assessing relevance for Rule 404(b) purposes, the trial judge must "determine whether there is sufficient evidence for the jury to find that the defendant in fact committed the extrinsic offense." United States v. Terebecki, 692 F.2d 1345, 1349 (11th Cir. 1982); see also Fed.R.Evid.104(b) ("When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition."). Additionally, the Court concludes that this testimony cannot be made reliable absent a "mini-trial" as to what actually occurred and who was involved in the 2007 incident which, in turn, would both waste time and draw the jury's attention away from the facts of the instant case. Finally, given the vagueness of the proposed testimony, and the fact that the alleged incident occurred in 2007, the Court determines that any

---

[4] The Government admits that the CI who made the controlled purchase in 2007 has since become both unreliable, as the result of a suicide attempt made shortly after that incident, and unavailable. To the extent that Agent Pacheco would testify as to what he was told by the CI, the admission of such testimonial evidence would violate Ms. Padilla's Sixth Amendment right to confront the witnesses against her. See Crawford v. Washington, 541 U.S. 36, 68 (2004) (Sixth Amendment's Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.").

probative value of this evidence is substantially outweighed by the danger of unfair prejudice.  See Fed.R.Evid. 403; see also Terebecki, 692 F.2d at 1349 (district court afforded "broad discretion in determining if an extrinsic offense is too remote to be probative" and noting that "the more remote the extrinsic offense the less probative it is.).  For these reasons, *Ms. Padilla's Second Motion in Limine* will be granted.

As always, each pretrial evidentiary ruling set forth herein is subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

### III. CONCLUSION

For the reasons set forth more fully above, the Court denies Defendant's *Motion to Produce Informants and to Compel Disclosure of Information Regarding Informants*; grants *Ms. Padilla's Motion in Limine*; denies in part and defers ruling in part on Ms. Padilla's *Motion in Limine to Exclude "Expert" Testimony of Adrian Flores*; denies in part and defers ruling in part on Ms. Padilla's *Motion in Limine to Exclude "Expert" Testimony of Laura J. Hernandez*; and grants *Ms. Padilla's Second Motion in Limine*.  As always, each pretrial evidentiary ruling set forth herein is subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

**IT IS, THEREFORE, ORDERED** that Defendant Gail Padilla's *Motion to Produce Informants and to Compel Disclosure of Information Regarding Informants* [Doc. 20] is **DENIED;**

**IT IS FURTHER ORDERED** that *Ms. Padilla's Motion in Limine* [Doc. 22] is

**GRANTED**;

**IT IS FURTHER ORDERED** that Ms. Padilla's *Motion in Limine to Exclude "Expert" Testimony of Adrian Flores* [Doc. 34] is **DENIED IN PART and RULING DEFERRED IN PART;**

**IT IS FURTHER ORDERED** that Ms. Padilla's *Motion in Limine to Exclude "Expert" Testimony of Laura J. Hernandez* [Doc. 35] is **DENIED IN PART and RULING DEFERRED IN PART;**

**IT IS FURTHER ORDERED** that *Ms. Padilla's Second Motion in Limine* [Doc. 46] is **GRANTED.**

**SO ORDERED** this 20th day of October, 2009, in Las Cruces, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge